May 1, 2009

**FILED**

FEB - 7 2012

Clerk, U.S. District and
Bankruptcy Courts

The Hon. Royce C. Lamberth
Chief Judge
United States District Court
for the District of Columbia
333 Constitution Avenue
Washington, D.C. 20001

mc 12-74 (RCL)

Dear Chief Judge Lamberth,

My name is Luke A. Nichter, and I am a history professor in the Texas A&M University system. I specialize in American political history, in particular the 1960s and 1970s. As you can imagine, studying periods such as the Nixon administration can make for fascinating work.

In the process of my work, it has been the greatest privilege to have been in regular touch with key public figures from that time, including: Henry A. Kissinger, George H.W. Bush, George P. Shultz, G. Gordon Liddy, Charles W. Colson, John W. Dean, Raymond K. Price, and others. I have been very fortunate that my work has been featured by the media in ten countries, including the BBC, Associated Press Radio and Television, ARD German Public Television, HBO, *The New York Times*, and *The Washington Post*.

I write you today because in the process of doing some work at the Lyndon B. Johnson Presidential Library in Austin a few weeks ago, I came across an astonishing find: the papers of Larry O'Brien, Chairman of the Democratic National Committee during the Watergate break-in, which have never been processed or made available to the public. You can imagine how giddy that makes a historian, especially considering there are records in the collection related to the break-in, which was the catalyst for what remains the nation's greatest political scandal, and the only such time a United States president resigned.

Despite the vast number of studies—as well as litigation—related to Watergate, there are still basic facts that we still do not know. Quite apart from my discovery of the O'Brien papers, of much greater magnitude in terms of our understanding is the content of the illegally obtained wiretapped materials from the Democratic National Committee headquarters. While the traditional understanding of the break-in was the need to acquire "political intelligence", the sealed wiretapped materials purportedly will demonstrate that exposing a prostitution ring was the real motivation for the break-in. After all, if the purpose of the break-in was to obtain "political intelligence", then why was Larry O'Brien's phone and office never bugged?

Numerous courts have maintained that there are many facts about Watergate that remain mysterious, chiefly among them the motivation for the break-in. However, after Judge John J. Sirica sealed the wiretapped materials in *U.S. v. Liddy* (D.D.C., 1973), no one been able to make

**RECEIVED**

FEB 07 2012

Clerk, U S District & Bankruptcy
Courts for the District of Columbia

Chief Judge Lamberth – May 1, 2009 - 1

a compelling case to unseal these once-sensitive materials. However, I believe there now may be a mechanism for reconsideration, and I would like to get your thinking before I proceed.

As you may be aware, *The New York Times* successfully sought to unseal wiretap and search warrant materials in *United States v. Brener, Suwal and Lewis*, 2009 WL 424383 (S.D.N.Y. February 19, 2009) ("*Spitzer I*") and 2009 WL 724944 (S.D.N.Y. March 19, 2009) ("*Spitzer II*"). As in *U.S. v. Liddy*, the materials had been sealed on the basis of the Omnibus Crime Control and Safe Streets Act of 1968.

Yet, in *Spitzer*, Judge Rakoff concluded that public interest in judicial records outweighed any opposing interests and granted the motion to unseal, noting: "there is an obvious interest in obtaining information about the origins of an investigation that led, ultimately, to the resignation of the Governor of New York" (see attached). However, based on that rationale, wouldn't there be an even stronger case for releasing the *Liddy* wiretapped materials? We are talking about nothing less than the greatest political scandal in American history and the only resignation of a president of the United States.

Finally, unlike the *Spitzer* wiretapped materials, the *Liddy* wiretapped materials are no longer of great political sensitivity, as many of the principals involved are long gone. Nearly four decades after the break-in, don't the American people deserve to know something closer to the truth? Like *Spitzer*, even partially redacted records would be better than what we have today.

Thank you in advance for considering this proposal. If you have any questions, please do not hesitate to contact me.

Sincerely,


Luke A. Nichter, Ph.D.




r


Enclosures:   "SDNY Court Orders Unsealing of Wiretap Applications in Investigation of Prostitution Ring"

Chief Judge Lamberth – May 1, 2009 - 2

United States District Court
for the District of Columbia
Washington, D C 20001

Chambers of
Chief Judge
Royce C. Lamberth
United States District Judge

August 24, 2010

Luke A. Nichter, Ph.D.


Dear Dr. Nichter:

I am in receipt of a copy of your letter of August 1, 2010, to the Executive Director of the D.C. Historical Society, attaching a copy of your letter of May 1, 2009, to me – which, for some unexplained and unknown reason, I never saw before.

I apologize for the delay is responding, and I assure you it is not because I attended the University of Texas.  Believe it or not, some of my best friends are Aggies.

I think you have raised a very legitimate question, and I have decided that I could treat your letter as a request to unseal the Watergate court records that we can identify and retrieve from The National Archives.  Alternatively, once we have retrieved what we have available, we could discuss the details of what you are seeking and you could file a more specific request.  Towards that end, I have directed the Clerk's Office to gather what we have access to, and I will have my staff talk to you further after we have them in my chambers if that is acceptable to you.

Your diligence in pursuing this is very much appreciated.  The thought of what you suggested had never crossed my mind.  I'm sure we can work through this together in a way that will benefit the public interest and not harm any legitimate remaining privacy interest.


Sincerely,

Royce C. Lamberth
Chief Judge


cc:    Linda Ferren, Executive Director,
       Historical Society of the D.C. Circuit

September 6, 2010

The Hon. Royce C. Lamberth
Chief Judge
United States District Court
for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C.  20001

Dear Chief Judge Lamberth,

Thank you for your letter of August 24, 2010. I am grateful that you do not hold it against me that I help to educate Aggies!

I must preface my response by thanking you for treating my letter of August 1, 2010 as a request to unseal the Watergate court records that you are able to identify and retrieve from The National Archives. As a historian of the Nixon administration—and the Nixon tapes specifically—I believe you are doing a great service to history and the American people.

Your honor, you require no reminder that I am not an attorney, but a historian. I have brought this request to you with a minimum of formality and a vast ignorance of how these proceedings ordinarily take place in your court. My interest is simply the historical record. If at any point it would behoove me to obtain an attorney's assistance with filing a proper petition, I will do so. I have no desire to test the court's patience given the importance of this matter.

Regarding the specific points raised in your letter, please do proceed as you have described. At the appropriate time, I would be pleased to have a discussion with your staff if it would be helpful to narrow my request.

Before closing, if I may, I should clarify why I made the connection between this matter and *Spitzer*, and why I believe *Spitzer* permits an unsealing of the Watergate records.

Like *Spitzer*, investigations related to alleged Watergate activities were fundamentally about the public's right to know of the actions of public officials and their agents. Furthermore, like *Spitzer*, those involved in Watergate were on the public payroll—either of the Committee to Re-Elect the President or the White House—and they were agents of an elected official.

According to available evidence—including the Nixon tapes, and testimony and depositions from various Watergate-related court cases—the sealed materials include summaries of wiretapped materials. These and other sealed materials may be the key to determining why the Watergate break-in occurred, who ordered it, and what the burglars were looking for, which—despite the passage of nearly forty years, years of litigation and the expense of millions of taxpayers' dollars—remain questions to which we still do not hold the answers.

*Chief Judge Lamberth – September 6, 2010 - 1*

The summaries of the wiretapped materials were allegedly prepared by James McCord of the Committee to Re-Elect the President, who obtained the wiretapped materials from telephones operated by the Democratic National Committee. According to the chain of command, McCord circulated the summaries to Committee to Re-Elect the President staff Gordon Liddy and Jeb Magruder.

Liddy was responsible for submitting the summaries to the White House, to Chief of Staff Bob Haldeman, through his assistant Gordon Strachan. In fact, it was Strachan's alleged knowledge of the wiretapped materials that concerned Nixon most, and was a primary reason why a White House-ordered cover-up commenced shortly after the famous June 1972 break-in. In an unusual proceeding, Judge Sirica later severed Strachan—and Strachan alone—from the other Watergate defendants, which remains another mystery that perhaps these sealed records may help to solve.

As a result of the sealing by Judge Sirica—which, as I understand it was not his preference—I argue that his ruling was incomplete. His sealing denied the public the right—as articulated in *Spitzer*—to monitor the actions of public officials and their agents. Also, like *Spitzer*, it is indisputable with Watergate that elected officials or their agents were involved. It is on this basis that I believe *Spitzer* permits an unsealing of the Watergate records.

Your honor, permit me to thank you again for your generous consideration of my request.

Sincerely,

Luke A. Nichter, Ph.D.

August 7, 2011


The Hon. Royce C. Lamberth
Chief Judge
United States District Court
for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C.  20001


Dear Chief Judge Lamberth,

After a period of extensive review of *U.S. v. Liddy* and associated records, I thought it was time to get back in touch with you following your letter of August 24, 2010 (enclosed).

As you know, the records pertaining to these matters are quite voluminous. While I have never considered myself a Watergate "expert", it has taken me—someone with a good familiarity already—a period of months to be able to more precisely articulate to you which records I am requesting that you unseal/open. In the course of this review, I consulted three key records: 1) transcripts of *U.S. v. Liddy*[1], 2) Charles Morgan, Jr.'s memoir[2], and 3) a deposition of Earl J. Silbert dated June 27, 1996.[3] As a reminder, I am a historian and not a jurist, so I apologize for any clumsiness in my descriptions.

As I conveyed to you in my letter of August 1, 2010, my purpose for this request is simple:

*The American people, in 2011, do not know why representatives of President Nixon's Committee to Re-elect the President broke in to the Watergate offices of the Democratic National Committee. The break-in ultimately led to the resignation of President Nixon, the first occasion in American history in which a president resigned.*

*In U.S. v. Liddy, Judge Sirica was in possession of evidence that he—and Earl Silbert—believed would determine why the break-in occurred. However, after the Court of Appeals intervened in Sirica's trial and ruled 2-1 that such evidence was not needed to consider the charges of the eight count indictment which included "conspiracy, burglary, endeavoring to intercept both oral and written communications, the possession of eavesdropping and wiretapping devices, and interception of wire communications", the pursuit of the reason for the break-in was abandoned.*

*The reason for the break-in remains one of the greatest mysteries in American political history, and is at the core of unanswered questions regarding Watergate. After all, if in the course of the*

---

[1] National Archives and Records Administration, Archives II, College Park, Maryland, Record Group (RG) 21, United States District Courts, District Court for the District of Columbia, CR 1827-72, U.S. v. Liddy, Transcripts.
[2] Charles Morgan, Jr., *One Man, One Voice* (New York: Holt, Rinehart and Winston), 1979. ISBN: 0-03-013961-9.
[3] In the matter of Maureen K. Dean and John W, Dean v. St. Martin's Press, Inc., et al. (United States District Court for the District of Columbia, C.A. No. 92-1807).

Chief Judge Lamberth – August 7, 2011 - 1

*wiretapping, we recognize that something overheard was a trigger for the break-in on June 17, 1972—which led to the arrest and subsequent criminal conviction of the original "Watergate seven"—isn't what was overheard on the wiretaps therefore of importance? (Even if not vital to executing the eight count indictment in* U.S. v. Liddy*) That is the fundamental question. After 40 years, it is time for materials sealed/closed by the courts—which, for the most part, are not Grand Jury records—to be unsealed/opened so that the people of the United States can know why the break-in occurred.*

So that your staff can use their time efficiently, I would like to significantly reduce the scope of my original request to you, to sealed/closed records created during the following timeline:

1/3/73:     Charles Morgan—a third party uninvolved with *U.S. v. Liddy* to this point—files a motion with Judge Sirica to suppress evidence that reveals details of the wiretapped conversations. Sirica denies on the basis that Morgan is a third party.

1/4/73:     Morgan files appeal with the Court of Appeals.

1/12/73:    Court of Appeals conducts closed hearing at 10:30 am with Charles Morgan and Earl Silbert.

1/16/73:    Court of Appeals informs Sirica that Morgan can participate in *U.S. v. Liddy*.

1/16/73:    Alfred Baldwin called as witness in *U.S. v. Liddy* and questioning broaches content of wiretapped conversations. Morgan objects on grounds of privacy and previous Court of Appeals decision. Sirica questions extent of Court of Appeals decision and whether it prevents all discussion of content of wiretapped conversations.

1/18/73:    Court of Appeals hearing on admissibility of Baldwin's testimony and broader question of inclusion of contents of wiretapped conversations.

1/19/73:    Court of Appeals informs Sirica that discussion of wiretapped conversations is inadmissible.

1/22/73:    Baldwin testimony resumes, but is incomplete due to voids where he is not permitted to veer into content of wiretapped conversations, which occurs on more than one occasion (as with subsequent witnesses—such as DNC employees—who also had knowledge of or participated in wiretapped conversations).

The sealed/closed records that I am asking permission for you to unseal/open include:
1. All Court of Appeals and District Court records of closed hearings, including but not limited to hearings on 1/12/73 and 1/18/73.

2. The recording of an interview that Alfred Baldwin gave to the *Los Angeles Times*, and any associated transcripts.

Chief Judge Lamberth – August 7, 2011 - 2

3. All statements and testimony given by Alfred Baldwin to the FBI, U.S. Attorneys, and the Grand Jury during the month of July 1972.

4. A removal of any prohibition placed upon Alfred Baldwin and/or Earl Silbert from discussing, publishing, or publicly communicating their views or recollections pertaining to this matter. Both men are up in years as of 2011, and as far as I know neither has ever discussed this matter because of the Court of Appeals ruling. Silbert, for one, has claimed to have always believed that the Watergate break-in was about "sexual blackmail", which is quite different than the mainstream view as proffered by outlets such as the *Washington Post*. I believe the unsealing/opening of the wiretapped materials will significantly revise our understanding of the Watergate break-in in the direction of Silbert's understanding.

I apologize for this excessively verbose letter. As far as I know, no one before me has so diligently researched the records pertaining to this matter and it was no small feat to do so before composing this revised request to you.

I have chosen not to attach excerpts from the records I consulted to construct the above timeline. Even the excerpts would have run into dozens of pages. However, I would be happy to direct your staff to specific page numbers.

As a historian of the Nixon administration—and the Nixon tapes specifically—I believe you are doing a great service to history and the American people by considering this request.


Sincerely,


Luke A. Nichter, Ph.D.



}


Please note after August 25, 2011, my address will change to:



Enclosure: Letter from Chief Judge Royce C. Lamberth to Luke A. Nichter, August 24, 2010.



**FW: FW: U.S. v Liddy dockets from Court of Appeals**
Luke A. Nichter    to: jeremy_baron                        11/22/2011 10:47 AM

History:        This message has been replied to.

Dear Jeremy,

Thanks for your patience while I've been going through the latest batch of
files from the Archives. Before calling you, I thought I would first send this
and then wait to see how you and Chief Judge Lamberth would like to proceed.

The complete file--except for the sealed portions--from the Archives on the
January 1973 appeal from U.S. v Liddy et al (1827-72) to the Court of Appeals
(73-1020) is available here: http://bit.ly/tDiiie (pdf, 441 MB). It's a large
file, so if you have trouble opening it I can send it to you on CD.

My reaction after studying the files, as well as re-reviewing related files
that I obtained previously, is to simply make a request to unseal all District
Court materials sealed in the course of U.S. v Liddy et al (1827-72 and
73-1020).

I say this for two reasons: 1) we are not talking about a large volume of
materials (far less than the 1975 Nixon Grand Jury materials), and 2) I want
to make sure I include all applicable records, and it's not clear whether my
review to date has turned up all applicable records.

Allow me to elaborate. In the file linked above, I found the following pages
which refer to sealed District Court materials (for sake of consistency, all
page numbers refer to the page numbers in Adobe Acrobat, not the page numbers
printed on the records):

- Pg. 400: memorandum dated 2/16/73 from the Court of Appeals to the District
Court returning the following sealed materials: a "preliminary record" and
"three supplemental records"
- Pg. 516: memorandum dated 4/26/73 from Court of Appeals to the District
Court returning the following sealed materials: "two sealed envelopes of
exhibits"

Also:
- Pg. 377: a Court of Appeals order permitting sealing of post-hearing
memoranda (not sure whether those materials are part of the above mentioned
transfers to District Court or not)

As far as I can tell, these sealed records were not sealed by a Grand Jury
process but by Judge Sirica, Chief Judge of the District Court at the time.

I do not know the whereabouts of the Al Baldwin interview tapes from the L.A.
Times, or the transcripts created at the request of Judge Sirica. These are
both important as well, and I would like to retain them as part of my request.
Their whereabouts are not mentioned in the records, so I can only assume they
are still retained by the District Court. I believe a portion of the
transcripts was released years ago, but as far as I know it was only a
portion.

While I am not saying anything that I haven't said to you and Chief Judge
Lamberth already, this is my argument for the release of these materials:
-Richard Nixon's 1975 Grand Jury testimony was released on November 10, 2011
according to FOIA provisions
-FOIA provisions strike a fair balance between openness in light of historical

interest and any remaining valid privacy and/or national security restrictions
-However, there would have been no Nixon Grand Jury testimony (let alone a
Grand Jury) if there hadn't been a break-in at the Watergate offices of the
DNC during June 1972
-there would not have been a break-in at the Watergate offices of the DNC
during June 1972 if Baldwin had not heard something important enough on the
intercepts to have triggered the break-in
-therefore, there remains today great historical interest in why the break-in
occurred in the first place
-if the Court of Appeals had not stopped Judge Sirica (although Court of
Appeals Judge MacKinnon dissented in a 2-1 vote), the District Court would
have permitted the prosecution to have answered that question in 1973

If I may be so bold, the method of release of the 1975 Nixon Grand Jury
testimony could be helpful here, too:
-as with the release of the 1975 Nixon Grand Jury materials, the release of
the above requested materials by FOIA procedures would again strike a fair
balance between openness in light of historical interest as well as protect
any remaining valid privacy and/or national security restrictions
-without these materials, we cannot hope to understand why the break-in
occurred in the first place, which resulted in a White House cover-up, the
greatest constitutional crisis since the Civil War, and the only resignation
of an American president

While more than 40 years of the FOIA have proven more than adequate in
striking a fair balance between openness in light of historical interest and
the protection of any remaining valid privacy and/or national security
restrictions, if there is nothing controversial contained in these sealed
materials, then there should be no objection to a complete release.

Thanks once again for your time. If you have questions, the best way to reach
is on my cell phone:

I look forward to hearing from you.

Best wishes,

Luke

Luke A. Nichter, Ph.D.