UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
IN RE PETITION OF LUKE NICHTER )
) Misc. Action No. 12-74 (RCL)
)

## MEMORANDUM OPINION & ORDER

Before the Court is Luke Nichter's request to unseal certain categories of records included in his Petition to Unseal Specified Documents Related to *United States v. Liddy*, District Court criminal docket number 1827-72 [1]. On June 10, 2013, this Court granted his petition in part and denied it in part. 949 F.Supp.2d 205 (D.D.C. 2013). In a letter dated June 24, 2013, Dr. Nichter requested the Court reconsider its ruling with respect to two categories of documents – the content of illegally obtained wiretaps, and grand jury records. Nichter Ltr., June 24, 2013.[1] The Court will treat Prof. Nicter's letter of June 24, 2013 as a motion to alter or amend the judgment of June 10, 2013. Fed. R. Civ. P. 59(e). Upon consideration of the petition, the entire record herein, and the applicable law, the Court will deny the petitioner's motion for the reasons set forth below.

### I. BACKGROUND

Petitioner Luke Nichter, a professor at Texas A&M University, submitted a letter asking the Court to unseal certain records associated with the Watergate scandal. Prof. Nichter

---

[1] Professor Nichter's correspondence with the Court between May 2009 and November 2011 was consolidated and posted on the docket as ECF entry number one. His letters of June 24, 2013, April 28, 2015, and September 30, 2016 are likewise consolidated and docketed by separate order on this docket. When citing to Professor Nichter's various letters and emails, the Court will use the date of correspondence. The letter of June 24, 2013 also requests production of documents turned over to the district court by John W. Dean, III on May 14, 1973. The Court will treat that request as a new petition, which the Clerk will docket with a new miscellaneous number. The request for the Dean materials will therefore not be addressed further in the present Order.

1

desired to determine "why the Watergate break-in occurred, who ordered it, and what the burglars were looking for," and he believed the Court's files would resolve this historical mystery. Nichter Ltr., Sep. 6, 2010 [1]. He originally sought only documents at issue in *United States v. Liddy*, 354 F. Supp. 208 (D.D.C. 1972), specifically records disclosing what Alfred C. Baldwin, III, the individual tasked with monitoring the wiretap of the Democratic National Committee, overheard. *See* Nichter Ltr., May 1, 2009 [1]. Later, Prof. Nichter requested that the Court unseal the entire file in *United States v. Liddy*, criminal docket number 1827-72. Nichter Email to Jeremy Baron, Nov. 22, 2011 [1].

In its response, the Department of Justice agreed that certain files should be unsealed, but objected to the unsealing of documents in three specific categories: (1) presentence reports and other documents implicating the privacy of living individuals; (2) documents reflecting the content of illegally obtained wiretaps; and (3) grand jury information. Prof. Nichter filed a Reply asking the Court to (a) immediately unseal all uncontested materials and order the National Archives and Records Administration ("NARA") to expeditiously review and release those records; to (b) hold in abeyance ruling on those documents whose unsealing and release the government objected to; and to (c) order an investigation into the extent of the breach of grand jury secrecy by Washington Post reporters during the Watergate era. Nichter Reply 1-2 [11].

On November 2, 2012, the undersigned Judge granted in part and denied in part Prof. Nichter's request. *In re Petition of Luke Nichter*, Misc. No. 12-74 (RCL), 2012 WL 5382733, at *1 (D.D.C. Nov. 2, 2012). The Court's order unsealed all District Court records that the government did not object to unsealing. *Id.* The Court also ordered the Department of Justice to submit, *ex parte* and under seal, copies of all District Court records it believed should remain

2

sealed. Prof. Nichter's request that the Court order an investigation into the breach of grand jury secrecy during the Watergate era was denied. *Id.*

In accordance with that order, on November 30, 2012, the NARA released and made available online approximately 950 pages of documents. On December 10, 2012, the Justice Department submitted the requested surreply along with copies of 15 sets of documents it believed should remain under seal because they would disclose private, personal information, constitute a breach of grand jury secrecy, or reveal information obtained by an illegal wiretap.

On June 10, 2013, this Court granted in-part the unsealing of certain additional documents implicated by Prof. Nichter's petition. The Court ordered to be unsealed and released the presentencing reports and some personal documents related to the *Liddy* case, subject to appropriate NARA redactions, 949 F.Supp.2d at 210, as well as the names of individuals overheard on the illegal wiretaps. *Id.* at 211. The Court denied Prof. Nichter's motion with respect to the substance of the illegally tapped conversations and the grand jury materials, however, which remain under seal. *Id.* at 212-14.

Prof. Nichter subsequently sent three letters to the Court, one dated June 24, 2013, responding to the ruling, another dated April 28, 2015 sharing correspondence Prof. Nichter sent to the Department of Justice advocating for a change to Federal Rule of Criminal Procedure 6(e); and a third on September 30, 2016, with which he included a notification of subsequent authority related to the release of grand jury records.[2]

## II. <u>DISCUSSION</u>

The Federal Rules of Civil Procedure allow a petitioner to move to alter or amend

---

[2] The letters of June 24, 2013 and September 30, 2016 also included attached exhibits that have no bearing on the present motion.

3

a judgment within 28 days of that judgment. Fed. R. Civ. P. 59(e). Such a motion "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996) (per curiam)). Because the Court previously explained in-full its basis for maintaining the secrecy of the requested information and none of the *Fox* conditions applies to the relevant materials, the Court denies Professor Nichter's motion.

### A. Release of Illegally Intercepted Wiretap Information

Prof. Nichter originally asked the Court to unseal records containing descriptions of information obtained through Alfred C. Baldwin III's monitoring of the illegal wiretap placed at the Democratic National Committee. Nichter Ltr., May 1, 2009 [1]; Nichter Reply [4]. As the Court previously explained, 949 F.Supp.2d at 211-12, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), codified at 18 U.S.C. §§ 2510-2520, prohibits disseminating the contents of an illegal wiretap. This prohibition applies to private conduct as much as to the conduct of the government. *Chandler v. U.S. Army*, 125 F.3d 1296, 1298 (9th Cir. 1997). Under the statute, wiretap "contents" include "any information concerning the substance, purport, or meaning of that [intercepted] communication." § 2510(8). No public or historical interest exception allowing disclosure exists. Nor does Prof. Nichter or the public have a First Amendment right to access documents containing illegally obtained wiretap information.

However, the Court also determined the names of those overheard on the illegal wiretap could be released because § 2510 was specifically amended in 1986 to "exclude from the

4

definition of the term 'contents' the identity of the parties or the existence of the communication." S. Comm. on Judiciary. Electronic Communications Privacy Act of 1986, S. Rep. No. 99-541, at 13 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3567. The Senate report noted that the change "distinguishes between the substance, purport or meaning of the communication and the existence of the communication or transactional records about it." *Id.* The Court thus ordered the release of the names of those overheard on the illegal wiretaps to the extent the wiretap information was not otherwise sealed.

In his letter of June 24, 2013, Prof. Nichter proposes that the Court release "the records of [Alfred] Baldwin's recollection of the telephone calls themselves," with "precise" redactions, presumably as to which statements are attributable to which speakers.[3] Petitioner argues "releasing only the contents of the conversations would also maintain the current level of privacy afforded to those overheard by Baldwin."

Notwithstanding the Court's disagreement with the merits of his argument,[4] the privacy interests at stake are inapposite to the basis of the Court's earlier ruling on this issue. *See* 949 F.Supp.2d at 211-12. As the Court noted in its previous opinion, absent future congressional action allowing the disclosure of illegally obtained wiretap information that is historically

---

[3] Dr. Nichter discussed this proposed "compromise" regarding the wiretapped conversations in the portion of his letter that shared a heading concerning the released presentence investigation reports (PSRs). There is no indication, however, that Dr. Nichter quarrels with the Court's earlier disposition regarding those PSRs, and the Court accordingly will not revisit that portion of its opinion.

[4] The Court is highly skeptical that releasing the substance of the conversations would not impact the privacy of those recorded on the illegal taps. In any event, that the Court has already released the names of the speakers on the calls, leaving a finite universe of individuals to match up with certain conversations, undermines Prof. Nichter's argument further. Indeed, mosaic theory is a long-recognized justification for withholding sensitive information from public release. *See, e.g., Center for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 928-29 (2003) (citing *CIA v. Sims*, 471 U.S. at 159, 178 (1985)); *Edmonds v. U.S. Dep't of Justice*, 405 F.Supp.2d 23, 32-33 (2005). The Court recognizes that, with the names of those recorded on the illegal wiretaps already made public, releasing the substance of those conversations could only lead to speculation over which conversations can be attributed to which individuals. Such an exercise would inevitably impinge upon the very privacy concerns the Court has already acknowledged. 949 F.Supp.2d at 211 n.10. Furthermore, perhaps worse still than scholars surmising correctly as to which speaker said what, is the ramifications of their guessing wrong.

5

significant, this Court has no authority to release any information that would identify the contents of the wiretaps in question. There has been no intervening change of controlling law, new evidence made available, nor an error or injustice that needs correcting. *Fox*, 389 F.3d at 1296. The Court therefore denies petitioner's motion as to the wiretap records.

## B. Grand Jury Records

The Court also previously denied Prof. Nichter's request for grand jury materials in its order of June 10, 2013. 949 F.Supp.2d at 212-14. Petitioner argues in his motion that "many Watergate figures are either deceased or have come out in support of disclosure, directly or indirectly, through overt statements of support, depositions and testimony in various Watergate-related cases over the decades, or through the income generated by decades of speaking and writing about Watergate." He then proceeds to provide a detailed accounting of the purported supporters for disclosure, including some prominent, still-living Watergate figures, and a plethora of Watergate historians. On this matter, too, the Court declines to alter its earlier judgment.

There is a tradition in the United States—one that is "older than our Nation itself"—that proceedings before a grand jury should remain secret. *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 295, 399 (1959)). This tradition is codified in Federal Rule of Criminal Procedure 6(e). *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 n. 9 (1979). The rule of grand jury secrecy is not without exceptions, however. In *In re Petition of Kutler*, this Court recognized that "special circumstances" may justify the release of grand jury materials outside the bounds of Rule 6(e). 800 F.Supp.2d 42 (2011). The Court found that the special circumstances exception, first applied in the Second Circuit, is well grounded in courts'

inherent supervisory authority to order the release of grand jury materials. Moreover, the exception, by its very nature, applies only in exceptional circumstances, requiring a nuanced and fact-intensive assessment of whether disclosure is justified.

In assessing the Kutler petition, the Court applied the factors enumerated in *In re Petition of Craig*, 131 F.3d 99, 106 (2d Cir. 1997), finding that the relevant factors weighed in favor of unsealing President Nixon's testimony and associated WSPF materials. Specifically, the Court held that the undisputed historical interest in the requested records far outweighs the need to maintain the secrecy of those records. For the reasons explained in this Court's June 10, 2013 order, that is not the case here. Dr. Nichter's above-quoted proffer of June 24, 2013 in his Rule 59(e) motion fails to meet any of the bases for granting such a motion. *See Fox* 389 F.3d at 1296. It also neither mitigates nor overcomes the privacy concerns the Court found to exist two weeks earlier.[5]

Nor does the Seventh Circuit's opinion in *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016), alter the legal landscape in a manner meaningful to this case. *Carlson* declared that circuit's recognition and articulation of district courts' inherent authority to disclose grand jury information outside of the strictures of Rule 6(e), as the Second Circuit had done in *Craig*, which merely echoes the approach this Court had already adopted.

---

[5] The scope of records Nichter seeks also goes well beyond what this Court granted in *Kutler*. As the Second Circuit noted in *Craig*, "There are obvious differences between releasing one witness' testimony, the full transcript, or merely the minutes of the proceeding." *Id. See also In re Shepard*, 800 F.Supp.2d 37 (D.D.C. 2011). Furthermore, the broad scope of material requested implicates at least one of the reasons the Supreme Court has recognized as justifying grand jury secrecy – that of protecting the privacy of individuals who may have been subjects of the grand jury's investigation, but were never indicted. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681– 82 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (noting that, among the goals achieved by grand jury secrecy is protecting an innocent accused who has been exonerated "from disclosure of the fact that he has been under investigation") (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954)). Although most privacy protections do not extend to deceased individuals, the involvement of persons in criminal proceedings who themselves are never indicted or tried nevertheless is presumed to merit continued secrecy, with only the rarest of exceptions, as recognized in *Kutler*.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Professor Nichter's Rule 59(e) motion as to the illegally obtained wiretap information and remaining grand jury records related to *United States v. Liddy* is **DENIED**.

**SO ORDERED** this 22nd day of May 2017

ROYCE C. LAMBERTH
United States District Court